## Barnhart *versus* Pettit.

1. An intruder on a warranted tract of land claiming by possession must show the boundaries of his possession as they existed and were claimed 21 years before the commencement of the ejectment against him, otherwise he will be restricted to the land cultivated or enclosed for that period of time. It is not to be *presumed*, without evidence, that he adopts the boundaries of the plaintiff's survey as his own.

2. Where the plaintiff claims under a warrant and survey for 400 acres, the payment of taxes on 200 acres only by the intruder is not sufficient evidence that he adopts and claims to the extent of the plaintiff's survey. Where the assessment corresponds neither with the plaintiff's survey nor with the extent of the defendant's possession as designated on the ground, it will not entitle the latter to enlarge his possession so as to include the quantity assessed.

3. After the plaintiff had shown a legal title from the Commonwealth, the *defendant* gave evidence of a possession by an intruder and a deed from him in 1801. The *plaintiff* then read, as rebutting evidence, deeds from several of the heirs of the intruder dated in 1846: *Held*, that the boundaries set forth in the deeds of the heirs were not evidence, against the plaintiff, of the limits and extent of the defendant's possession under the prior title derived from the intruder himself.

4. After the evidence has been closed and the argument commenced, the introduction of new evidence is within the discretion of the Court below, and is not the subject of review.

ERROR to the Common Pleas of *Greene county*.

This was an action of ejectment to October Term, 1850, by Jesse Pettit against Thomas Barnhart for 400 acres of land in Richhill township, Greene county, adjoining lands of Andrew Stewart on the east, Wm. Laughridge on the north, &c. James Bryan and others in possession were added as defendants.

On part of the plaintiff was given in evidence a *patent* to Robert Morris, dated 30th July, 1790, for 400 acres of land called St. George, on warrant dated April 10, 1788, granted to Ashford and conveyed by him to Robert Morris, by deed of 3d August, 1789, and the claim was traced to Jesse Pettit, the plaintiff, who claimed under an agreement, dated 15th July, 1849.

The *defendants* claimed by possession; and on the part of those who appeared, it was proved that *John Holden* resided on the land in dispute in the year 1800; that on the 20th October, 1801, he executed a deed and title-bond to Matthew Gray and William Gray, for his interest and claim; and on the same day the Grays gave a bond in the penalty of $1000, conditioned for the maintenance of Holden during his life, &c. Holden was married to the mother of Matthew and Wm. Gray, and continued to reside on the land with the permission of the Grays, till his death in 1813. His widow continued to reside on it till 1828 or 1829, when she

went to the house of her son William, where she died. Matthew and Wm. Gray, by deed dated 31st August, 1837, sold the land to Samuel Vanatta, who took out a patent for 340 acres and 69 perches and allowance. The part marked No. 4 on the diagram submitted, and a part in the possession of W. Bryan, who was returned as one of the persons in possession, are not in Vanatta's patent.

It was proved that possession had been kept up by Vanatta and his tenants till 20th January, 1846, when he sold a part of the land to Thomas Barnhart, and the remainder to the other defendants.

On part of the *plaintiff* was then offered in evidence a deed from John Lazear and wife, who was a daughter of John Holden, to *John Parkinson*, dated 24th March, 1846, which called for a tract of land situate in Richhill township, Greene county, known by the name of the Holden tract, adjoining lands of John Barnett, Wm. Laughridge, James Deeds, and others, being the land on which John Holden died.

Defendant's counsel objected to the deed because it was not conta ned in the plaintiff's abstract, and that no title was shown to have been in the grantors. The deed was admitted and exception taken.

Several deeds, dated in 1846, from other heirs and children of John Holden to *John Parkinson*, were also offered on part of plaintiff, giving the same description as in deed by Lazear and wife, as being the land on which John Holden settled and died. These deeds were objected to for same reasons, and exceptions were taken to their admission.

It appeared that Parkinson made an agreement with *Shriver* for the land which he claimed; and any claim in Shriver became vested in Pettit, the plaintiff, by agreement dated July 15, 1849.

The plaintiff then offered testimony to show how much of the land was cleared and enclosed for 21 years. From the evidence it appeared that there were several pieces of improved land on the tract. It was said that in the lifetime of Holden, there were some acres of up-land and 3 or 4 acres of bottom-land cleared. In the diagram by *Brister*, referred to in the verdict, the old improvements were referred to and were: No. 1, as containing 8 acres 36 perches; No. 2, 6 acres and 131 perches; and No. 3, 7 acres 27 perches. It was said that at the time of the trial there were perhaps three times as much improved land.

It appeared that in 1804, 200 acres were assessed in the name of John Holden; in 1806, 200 acres; in 1814, 200 acres in name of —— Holden; and in 1815, 200 acres in name of Sarah Holden, and from that year up to 1835, except the year 1829, which

[Barnhart v. Pettit.]

was omitted, 200 acres were assessed. In 1836, assessed St. George, $300 value, "William Cook's unseated land."

After the defendant's counsel began to address the jury, it being observed by the Court that the boundaries called for in the deed of Holden's heirs, given in evidence on part of plaintiff, were not evidence of the extent of John Holden's claim, the *defendants'* counsel offered to prove "the extent of the boundary of their claim." Objection to the testimony was taken on part of plaintiff, because it was testimony in chief, and should not be admitted at that stage of the case. The objection was sustained, and exception taken.

After charge from GILMORE, J., a verdict was rendered on 23d September, 1851, for the plaintiff, for the whole 400 acres, excepting that part of the land contained in the writ, and numbered 1, 2, and 3, in Robert Brister's diagram, which was annexed to the record.

Error was assigned: 2. That the Court erred in receiving in evidence the deeds from Lazear and others. 3. In rejecting the evidence offered to show the extent of the defendant's claim. 4. In charging that the defendants could hold no more land than was actually enclosed for 21 years before bringing the suit. 5. In their charge, that as Holden was assessed with 200 acres less than the amount contained in the survey made for the original warrantee, he had lost his constructive possession, and limited his claim to the land actually enclosed for 21 years.

*Watson* and *Ewing,* with whom was *Sayers,* for plaintiff in error.—It it was, *inter alia,* said in relation to the 4th assignment, that the plaintiff gave in evidence deeds from the children of Holden to show title in himself, and that the claims of the adjoiners called for in those deeds, were evidence of the extent of the claim of *John Holden;* and those deeds having been given in evidence by the plaintiff, were conclusive that he recognised those boundaries as the extent of the Holden claim; therefore, that the Court erred in taking the question of boundary from the jury, on the ground that the defendants had not given any evidence of boundary. It was said that the adjoiners called for in those deeds, were substantially the same as those called for in the survey made in 1837 by Brister for Vanatta, as would appear from the patent to Vanatta.

As to the 5th assignment, it was said that the constructive possession can be lost by assessment for less than the quantity claimed, only when the occupant takes a false position in relation to his taxes; and that in this case it did not appear that John Holden, or those claiming under him, knew that a warrant had been

[Barnhart *v.* Pettit.]

granted for the land.   It was contended that by paying taxes for 200 acres only, until a survey was made they were in no default; and after it was made in 1837, that the assessment was made to correspond with the real amount claimed, viz. 337 acres, the balance of the 400 acres being in the possession of another settler, who claimed it since 1798, or thereabouts.

*Downey*, *Montgomery*, and *Black*, were for defendants in error.—It was, *inter alia*, stated that the defendants offered no proof of the extent of their claim; and in its absence the presumption was that the disseissor claims nothing beyond his actual enclosure, and that he can hold no more than he has had enclosed for 21 years: 1 *Ser. & R.* 111, Cluggage *v.* Duncan.

The plaintiffs in error, however, insist that although they offered no evidence of the extent of their claim, the plaintiff below, having offered in evidence conveyances from Holden's heirs, the designation of boundaries in their deeds would supply this omission.   The fallacy of this argument consists in assuming that the Holden title was transmitted through the same channel; and it is exposed by the fact that the defendants below do not derive title through Holden's heirs, but through *Gray*, who was the *alienee* of Holden. The deeds from *Holden's heirs* to the plaintiff in the action, are no evidence of the extent of *Gray's* claim; he being in fact a stranger to them or their conveyances.   There was then no designation of the extent of their claim, until the survey made by Brister for Vanatta in 1837; but a few years before bringing suit. The Court therefore could give no other direction.

The *plaintiffs in error* further insist that by the payment of taxes for 200 acres for more than twenty-one years, their right to the entire survey was established.

In considering this position, the fact must be borne in mind, that the suit was brought for an original survey, containing 400 acres; and that the defendant's claim to the *whole* of the survey, if valid at all, must be by *constructive possession only.*

Where a party claims by constructive possession only, as derived from the payment of taxes, the assessment for, and payment of taxes on half the quantity of land contained in the survey, is an abandonment and desertion of the lines of the survey, and destroys his constructive possession; and having no intermediate designation of boundary, he will be confined to his actual enclosure. Thus in Clarke *et al. v.* Dugan *et al.*, 2 *Jones* 87, it is held: "That an assessment of warranted land for a disseising settler, of a less quantity than is called for by the warrant and survey, if made by his procurement, or even with his knowledge and acquiescence, will lose to him his constructive possession by detaching it from the landmarks which had sustained it."

[Barnhart v. Pettit.]

The opinion of the Court was delivered by

LEWIS, J.—A defendant in ejectment claiming under the statute of limitations must show the boundaries of his possession as they existed and were claimed twenty-one years before the commencement of the suit; otherwise he will be confined to the land cultivated or enclosed for that period of time. If he entered under color of title, and claimed and used the land designated in his conveyance, this, if the land be described with reasonable certainty, will be sufficient. If he claimed up, to the line of the plaintiff's survey, used it as his own, exercising the usual acts of ownership over, and paying taxes upon the whole tract, twenty-one years before the suit was brought, the statute will protect him for the whole. But the claim to the whole extent of the plaintiff's boundaries, and the acts of ownership under it, must be shown affirmatively by the defendant to have existed for the period required by the statute. It is not to be *presumed*, without evidence, that an intruder, without color of title, adopts the boundaries of another title as his own. Nor will it answer the purpose of the defendant to make claim to the plaintiff's boundaries, for the first time, on the trial of the cause. Making claim to them at an earlier period, short of the time prescribed by the statute, will be equally ineffectual.

Where the *plaintiff* claims under a warrant and survey containing four hundred acres, the payment of taxes on two hundred acres by the *defendant*, is not sufficient evidence that the latter adopts and claims to the extent of the plaintiff's survey. If the assessment corresponds neither with the plaintiff's survey nor with the extent of the defendant's possession as designated on the ground, it will not entitle the latter to enlarge his possession, so as to include the quantity assessed. A term which indicates nothing but quantity, furnishes no boundaries nor other points of description sufficient of itself to locate and circumscribe the possession.

After the plaintiff below had shown a legal title derived from the Commonwealth, the defendants gave evidence of a possession by John Holden, and a deed from Holden to William Gray, dated 20th October, 1801. The plaintiffs then read, as rebutting evidence, deeds from several of Holden's heirs, dated in 1846. The boundaries set forth in these deeds are not evidence of the limits and extent of the defendants' possession under the prior title, derived from Holden himself in 1801.

After the testimony has closed, and the argument has commenced, an application to introduce new evidence, must be disposed of according to the discretion of the Court below. The decision is not the subject of review here. The offer to prove "the extent of the boundary of the defendant's claim," amounts to nothing more than an offer to prove their *present* boundary. This was not material.

[*Barnhart v.* Pettit.]

The boundary as claimed twenty-one years before suit brought, is what was demanded by the exigency. This was not offered in any stage of the cause.

The defendants below obtained a verdict for so much of the land as was contained in parts "numbered 1, 2, and 3, in Robert Brister's diagram." This is presumed to include the land cultivated or enclosed twenty-one years before suit brought. They were not entitled, under the evidence, to anything more. They have, therefore, suffered no injury by the instructions of the Court, nor by the admission of evidence, in regard to the points of the cause. As the first, second, and third errors assigned have nothing to do with the merits of the case, we do not think it necessary to dispense with the rule of the Court in order to consider them. They are not specified in the manner required by the rule, and are therefore disregarded for the reasons stated in Rice *v.* The Farmers' and Drovers' Bank of Waynesburg.

Judgment affirmed.